appear from detention motion denial

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| UNITED STATES OF AMERICA | : | |
| :--- | :--- | :--- |
| | : | |
| v. | : | Magistrate No. 05-803-M |
| | : | |
| CHRISTOPHER ROBERT DENNING | : | |

---

BRIEF OF THE UNITED STATES IN SUPPORT OF ITS RESPONSE IN
OPPOSITION TO THE DEFENDANT'S MOTION FOR REVOCATION
OF THE MAGISTRATE JUDGE'S ORDER DETAINING
<u>CHRISTOPHER ROBERT DENNING PENDING TRIAL</u>

The United States of America, by Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Thomas M. Zaleski, Assistant United States Attorney, submits this brief in support of its response in opposition to the defendant's motion for the revocation of Magistrate Judge Welsh's Order detaining defendant Christopher Denning pending trial.

I.   <u>Introduction</u>

In a complaint filed on August 4, 2005, Christopher Robert Denning was charged with using interstate communications to assault a minor in violation of 18 U.S.C. § 2422(b). The complaint charges that the defendant engaged in a series of sexually explicit communications with an undercover F.B.I. agent whom the defendant believed to be a 13 year-old girl ("UC"). In these communications, the defendant described in extremely graphic detail the sexual acts that he intended to engage in with the "girl." The defendant ultimately took affirmative steps to

act on these communications by scheduling and appearing for a meeting with the "girl" at the Franklin Mills Mall in Northeast Philadelphia on Thursday, August 4, 2005.

After a detention hearing held on August 10, 2005, Magistrate Judge Welsh issued an order detaining the defendant pending trial. During the detention hearing, the defendant's counsel offered the possibility of posting two residential properties in Virginia and North Carolina on behalf of the defendant. These conditions of release were wholly insufficient to address the danger to the community posed by the defendant, and provided no security to the community, to whom the defendant is a danger. Defendant had thus failed to rebut the presumption of detention applicable to him under 18 U.S.C. § 3142(e).

This Court should accordingly deny the defendant's motion to revoke Judge Welsh's order detaining defendant Denning pending trial because there is no condition or combination of conditions which will reasonably assure the safety of the community and assure Denning's appearance as required. See 18 U.S.C. § 3142(e). The evidence in the affidavit in support of the complaint and warrant establishes that Denning is a danger to the community, and his circumstances also indicate that he poses a serious risk of flight.

II. <u>Statement of Facts</u>

   A.   <u>Offense Conduct</u>

The evidence against Denning is strong. On or about December 15, 2004, at approximately 1:04 p.m., an undercover FBI agent (UC) through an undercover computer, signed onto Internet Relay Chat (IRC). To use IRC a user must sign on, which means that the user must connect his computer to IRC via a modem. IRC is a service which allows its customers to access chat rooms. A chatroom is a format under which individuals on IRC can, through their computers, directly communicate in real time with other individuals who share a common interest. The UC was in an IRC chatroom titled "#0!!!!!!!ltlgirlsexchat" posing as a 13 year-old girl from Philadelphia, Pennsylvania. While the UC was in the chatroom, an individual using the screen name "gwizzz" initiated an instant message (IM) dialogue with the UC.

During the course of the initial conversation "gwizzz" stated that he was a 41 year-old white, male from northern Virginia. The UC advised that he was 13 years old. Gwizzz asked UC if she had ever been with an older guy. When the UC responded in the negative, gwizz responded, "so I could be your first?," and "gwizzz would take very good care of you"!!! Gwizzz then began describing in graphic detail what he would like to do to the UC, stating, "well first.....i'd probably lick your hard slippery little clit until you cum" and "gwizzz imagines his lips

wrapped around your hot little clit...his finger slipping wetly inside your tight pussy".  Gwizzz continued by telling the UC, "gwizzz would make you cum with his lips and tongue on your clit and a finger inside your pussy...." and "and then...once you cum once and your pussy is dripping wet...gwizzz would let you get on top and slide his hard thick cock inside you..." and "gwizzz imagines seeing you on top of him sliding up and down...". Gwizzz then asked the UC if she would really want to do that and, if so, they could meet to discuss it.  Gwizzz asked the UC to think about where she wanted to meet and provided his e-mail address of **cdenning3@cox.net**.  Gwizzz provided the UC with a photograph of a white male and white female during the chat session.  Gwizzz related that the male in the photograph was him and the female was his wife.[1]

On January 5, 2005, at approximately 12:55 p.m. in an instant message (IM), the defendant, while using the pseudonym "gwizzz," initiated a conversation with the UC.  During the course of the conversation, gwizzz described in explicit detail what he would like to do with the UC, stating "gwizzz imagines touching your hard nipples through your shirt.....," and, "gwizzz senses how nervous you are as he reaches around behind you and unsnaps your bra...".and, "gwizzz slips his hand under your

---

[1] The FBI later identified the male in the photograph as defendant Christoper Robert Denning after his arrest.

4

unhooked bra and teases your hard pink nipple gently with his fingers....all the while kissing you on the mouth...," "gwizz moves his mouth slowly from your lips...down your soft smooth neck...lifting your bra and then wrapping his lips around your nipple....," and, "gwizzz circles your nipple with his tongue and then sucks gently as he listens to you moan softly".  Gwizzz then discussed his desire to perform these acts in real life and travel to meet the UC.  **"i wish i was there so we could do it all for real".  "i'd drive up if you wanted me to," "we'd just have to plan it all out".**  He continued by stating, **"we'd have to meet at a mall or restaurant or something like that," "you'd hafta skip school....can you get away with that?"**

On February 1, 2005, at approximately 12:32 p.m., in an IM, gwizzz initiated a conversation with the UC.  (G)wizzz continued the discussion of meeting the UC.  During the conversation, gwizzz expressed a knowledge that meeting the UC for sex would not be legal, stating, "i hafta be kinda careful.....if you are a cop......i can't arrange to come up and meet you for sex....its legal for me to come meet you at the mall".

On June 2, 2005 at approximately 9:02 a.m. in an IM, gwizzz initiated a conversation with the UC.  During the conversation, gwizzz and UC discussed UC's teachers at school.  Gwizzz stated, "well...i'll be your teacher," and "or maybe you'd

5

like to do some biology?...reproduction?," and "we could have some hands on practice"!!! Gwizzz expressed his desire to keep their potential relationship quiet by stating, "ok...so we'll hafta keep our lessons discreet" and "nobody but you and i will ever know anything," "we won't let anyone find out," and "i could be your secret lover"!!!!!! Gwizzz then stated his desire to meet the UC by asking, "so when shall we have our first lesson?" Later he states to the UC, "i think we will start with the physical effects of arousal," and "if you think about it...isn't it better with someone who does know what he's doing...instead of someone your age who doesn't?"

On July 27, 2005 at approximately 10:20 a.m. in an IM, gwizzz initiated a conversation with the UC. During the conversation, gwizzz described in graphic detail what he would like to do with the UC, stating, "gwizzz brushes his finger along your pussy lips.....barely caressing you....until his finger rests on your hard little clit again....," "gwizzz slips his finger inside your tight wet pussy before rubbing your clit some more....teasing you with one hand and caressing your breast with the other...," "gwizzz moves his lips down....brushing through your soft pussy hair as you spread your pussy lips for his tongue....," "gwizzz presses his tongue against your clit.....teasing you....barely touching your hard swollen clit with just the tip of his tongue as he listens to you moan

6

softly....," "gwizzz lays down on his back and watches as you straddle his face.....," "gwizzz is licking your pussy lips and clit harder and faster now as you begin rocking your hips..." Gwizzz made several more descriptive and vulgar statements to the UC describing what he would like to do to her. He then expressed his intentions with the UC by stating, **"so i guess meeting for lunch is out now that you know what i really had in mind hmmm?"** Gwizzz again expresses his desire to meet the UC by asking, **"so when shall we meet for lunch?"**

On July 28, 2005 at approximately 10:50 a.m. in an IM, gwizzz initiated a conversation with the UC. He expressed his desire to meet by asking, "so you think thursday then?"[2] The UC and gwizzz discussed meeting at a local Philadelphia mall. Gwizzz also related that he had met someone on line before by stating, "its been a LONNNNNNNNNNNNNNNNNg time since i met anyone from on here."

The FBI arrested the defendant when he appeared at the scheduled time and location on Thursday, August 4, 2005, 176 miles from his home in Springfield, Virginia. After he was arrested, Denning admitted to the FBI that he was the individual known as "gwizzz" who had been communicating with the 13 year old girl over the Internet.

---

[2] The defendant was referring to Thursday, August 4, 2005.

B. <u>Denning's background</u>

Denning's past conduct demonstrates that conditions placed on him by the Court if released pending trial will not assure his appearance at trial or prevent him from engaging in the dangerous activity of soliciting minors for sex on the Internet. See 18 U.S.C. § 3142(g)(3)(A). The Court should consider: "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." The available evidence in several of these categories provides substantial reason to hold him pretrial.

(a) Physical and mental condition. Denning is in good health and apparently has no physical or mental problems which would require special treatment.

(b) Employment. Christopher Denning advised Pretrial Services that he is a Sergeant Major in the United States Army. Denning told Pretrial Services that he has been employed in the United States Army for approximately 26 years.

(c) Financial Resources. Denning advised Pretrial Services that he has enough assets to render him ineligible for Court-appointed counsel.

(d) History relating to drug or alcohol abuse. None documented.

(e) Criminal history. The defendant has no significant criminal history.

III. Argument

A. Standard of Review

In reviewing a magistrate judge's bail decision, the District Court should make an independent, de novo determination of the defendant's request for bail. United States v. Delker, 757 F.2d 1390, 1394-95 (3d Cir. 1985); accord, United States v. Thibodeaux, 663 F.2d 520 (5th Cir. 1981)(district court's responsibility to reconsider conditions of release fixed by another judicial officer is unfettered as if it were considering whether to amend its own action, and district court need not look for abuse of discretion or defer to judgment of prior judicial officer); see United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(en banc)(same rule applies where the defendant challenges detention order). The statute permits the District Court to hold a second evidentiary hearing. The Court may consider all the evidence adduced below as well as other evidence the parties may supply.

This Court should uphold the Magistrate Judge's order detaining the defendant pending trial because he is both a danger

9

to the community and a serious risk of flight.[3]  Because Denning faces a maximum of 30 years imprisonment, see 18 U.S.C. § 2422(b) and a mandatory minimum of five years imprisonment, and is charged in this case with using interstate communications to seduce a minor, this Court must presume Denning is both a danger to the community and a risk of flight absent sufficient rebuttal by Denning.  See 18 U.S.C. § 3142(e).  Denning has failed to rebut that presumption and thus should remain in pretrial detention.

      A.    Only Detention Will Protect The Community from the Danger presented by Denning.

Congress has concluded that, for purposes of bail, using interstate communications to seduce a minor creates a rebuttable presumption that the defendant is a grave danger to the community.  See 18 U.S.C. § 3142(e).  Denning faces a statutory mandatory minimum sentence of five years imprisonment if convicted for using the Internet to seduce a minor.  There is a rebuttable presumption that Denning must be detained pending trial.  See 18 U.S.C. § 3142(e).  Denning made no attempt to rebut the presumption at the detention hearing on Wednesday,

---

[3] The government must prove by a preponderance of the evidence that no conditions of release reasonably will assure the defendant's appearance or prove by clear and convincing evidence that no conditions of release will assure the safety of the community.  See United States v. Himmler, 797 F.2d 156, 161 (3d Cir. 1986).

August 10, 2005.  Denning now offers two moderately valued properties as collateral for a bond.  He also offers to move into his brother's and sister's residence in Virginia.  These proposed conditions utterly fail to rebut this presumption and therefore, the defendant should be detained pending trial.

In the Bail Reform Act, Congress explicitly determined that the charged offense conduct presented a grave danger to the community.  <u>See</u> 18 U.S.C. § 3142(e).  In such cases, there is a rebuttable presumption that the defendant should be detained pending trial.  <u>See</u> 18 U.S.C. § 3142(e).  Denning presents the precise danger that Congress intended to protect the community from when it enacted the Bail Reform Act.  In short, the seriousness of the crimes charged and Denning's conduct as summarized in the affidavit in support of the complaint and warrant demonstrates that he will remain a grave danger to the community unless this Court orders 24-hour confinement pending trial.  It is evident from the affidavit that the defendant will continue to pose a danger to children no matter what restrictions the Court places on him short of detention.

Denning can present no evidence that will rebut this presumption of dangerousness.  Earlier, during the detention hearing on August 10, 2005, the defendant's attempts to rebut the substantial evidence against him were: (a) to offer two out-of-state properties owned by he and his wife; and, (b) to inform the

magistrate judge that his wife and thirteen year old daughter would be moving out of their Springfield, Virginia residence so he could return there.[4] The magistrate judge found that these proposed conditions failed to rebut the presumption of detention called for under the statute.

Denning's past conduct over the course of approximately eight months demonstrates that release conditions will not effectively deter the defendant from using the Internet to seduce minor children into engaging in sexual activity, the gravely dangerous criminal conduct which Congress intended to protect the community from when it enacted the Bail Reform Act. Denning also cannot rebut the presumption that he is a danger to the community merely by posting bail and wearing an ankle bracelet, as these conditions would not prevent him from endangering children. Accordingly, this Court should detain him pending trial.

      B.    Denning Presents A Serious Risk Of Flight And Has The Means To Flee.

Denning also presents a serious risk of flight. Pursuant to 18 U.S.C. § 3142(e), this Court must presume he presents a serious risk of flight absent sufficient rebuttal. As detailed above, the weight of the evidence against Denning is substantial and presents a strong likelihood of conviction. Specifically, Denning was graphically communicating about

---

[4] The magistrate judge found this proposal "offensive."

12

performing sexual acts with a girl whom he believed to be was only thirteen years old.  Denning made arrangements to meet this person, and described in graphic detail what he would do once he met with her on numerous occasions during the course of his electronic communications with her.  On August 4, 2005, despite being married, despite being the father of a thirteen year old girl, and despite the added responsibilities of being a Sergeant Major in the United States Army, the defendant elected to leave his family, take a day off from work, and then drive 176 miles to Northeast Philadelphia to meet a thirteen year old girl whom he had never met before.  The combination of factors present in this case clearly establishes that defendant is a risk of flight, and that bond and electronic monitoring are not enough to hold him to his obligation to appear before the court.

Denning faces a sentence of mandatory minimum five years imprisonment if convicted of the charged offense conduct. See 18 U.S.C. § 2422(b).  He resides approximately 160 miles from downtown Philadelphia, and thus has no ties to this community. The weight of the evidence against him combined with the severe penalties he faces on conviction create a serious risk that Denning will flee to avoid these penalties.

IV. Conclusion

Because Denning presents a danger to the community and a serious risk of flight, and because Denning has failed to rebut

13

the presumption of the Bail Reform Act, this Court should detain him pending trial.  Only detention will adequately protect the community and assure his appearance at trial.

                              Respectfully submitted,

                              PATRICK L. MEEHAN  
                              United States Attorney  
                              Eastern District of Pennsylvania

                              MICHAEL LEVY  
                              Computer Crimes Chief  
                              Assistant United States Attorney

                              _____  
                              THOMAS M. ZALESKI  
                              Assistant United States Attorney

Date: August 22, 2005

CERTIFICATE OF SERVICE

       I certify that on this day I caused a copy of the United States' Brief in Support of its Motion to Detain Defendant and to be served by electronic filing and by facsimile on:

       Thomas A. Bello, Esquire
       P.O. Box 332
       Valley Forge, PA 19481
       FAX: (215) 988-1842

       Peter Scuderi, Esquire
       1420 Walnut Street
       Philadelphia, PA 19102
       FAX: (215) 546-8800


       _____
       THOMAS M. ZALESKI
       Assistant United States Attorney


Date: August 22, 2005

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :

    V. : MAGISTRATE NO. 05-803-M

CHRISTOPHER DENNING :

<u>ORDER</u>

AND NOW, this      day of August, 2005, it is hereby

ORDERED

that the above captioned defendant's motion for pretrial release is DENIED. The above-captioned defendant shall be <u>detained</u> pending trial.

BY THE COURT:

_____
JOHN R. PADOVA
U.S. District Court Judge